IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JAMES R. HEUSS, II., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:21-cv-662 (LMB/JFA) |
| | ) |
| CARLOS DEL TORO, Secretary of the Navy, | ) |
| et al., | ) |
| | ) |
| Defendants. | |

MEMORANDUM OPINION

Proceeding pro se, plaintiff James R. Heuss ("Heuss" or "plaintiff") filed this civil action under the Administrative Procedure Act and the United States Constitution, against the Secretary of the Navy ("the Navy") and the Director of the Board for the Correction of Naval Records ("BCNR") (collectively, "defendants") seeking review of the denial of his request to upgrade the status of his 1985 other than honorable discharge from the Navy.

On November 8, 2021, defendants filed a Motion for Summary Judgment ("Motion") [Dkt. No. 20]. Along with that Motion, defendants filed a Roseboro Notice advising plaintiff that any opposition to their motion had to be filed within 21 days. Roseboro v. Garrison, 528 F. 2d 390 (4th Cir. 1975). Although the Court granted plaintiff's request for a sixty-day extension, as of February 7, 2022, no opposition had been filed. Assuming plaintiff did not plan to oppose defendants' Motion, the Court reviewed the record and granted defendants' Motion; however, upon receiving the Order granting their Motion, defendants immediately advised the Court that they had received a copy of plaintiff's opposition. Given plaintiff's pro se status, the Court vacated its Order which had granted summary judgment, allowed plaintiff's opposition which defendants had attached to their Notice to be filed, and has now also received the defendants'

reply brief. Finding that nothing raised in plaintiff's opposition significantly changes the Court's previous analysis and conclusion, defendants' Motion will again be granted.

## I. BACKGROUND

The following facts are not disputed. Plaintiff enlisted in the Navy on February 2, 1984. AR 254.[1] On December 26, 1984, he was charged by Delaware state authorities with a single count of sexual assault, for improperly touching a three-year-old child while babysitting for another Navy member. AR 341-343. On March 12, 1985, on the advice of counsel, defendant signed a Probation Agreement in which he admitted that he "committed the offense charged" and agreed to get "psychological and/or psychiatric counseling and submit quarterly reports to the office for Pre-Trial Services," in exchange for avoiding being prosecuted for the offense. AR 340. Attached to the agreement was a copy of the charging document, which states, "James Huess [sic], on or about the 5th day of October, 1984, in the County of New Castle, State of Delaware, did have sexual contact with [redacted] a female not his spouse, without the consent of said [redacted], by touching her vagina in violation of Title 11, Section 761 of the Delaware Code of 1974, as amended." AR 341. After plaintiff signed this agreement, the prosecutor entered a <u>nolle prosequi</u> order on plaintiff's criminal charge in Delaware Family Court, AR 339, and no conviction was ever entered.

Plaintiff alleges that there was an agreement that the state prosecutors would not report the allegation to his commanding officer, AR 345, and there is no evidence in the record that they broke that agreement; however, because the victim's parent was a member of the Navy and was apprised of what happened in the criminal case, plaintiff's commanding officer received a

---

[1] References to the Administrative Record will be referred to as AR.

2

copy of plaintiff's admission. AR 342-43, AR 210, AR 332. In response, the Navy initiated proceedings to discharge plaintiff. AR 334-35.

On September 24, 1985, an administrative separation proceeding was held to consider the plaintiff's pre-trial agreement, and the separation board voted, 2-1, that plaintiff had committed misconduct "due to the conviction by civil authorities for sexual assault." AR 331-333. By a vote of 3-0, the separation board recommended plaintiff be separated from the naval service and that the discharge be under "other than honorable conditions." Id. Plaintiff was represented by counsel throughout those proceedings. Id. Although plaintiff's counsel made some evidentiary objections based on the prosecutor's agreement not to share plaintiff's admission with the Navy, he did not assert that the administrative separation board made a legal error in basing the discharge decision on a charge which had been nolle prossed. Id. See also AR 276-77.

Plaintiff was discharged on January 2, 1986. AR 254. He did not appeal the decision, although he claims that this failure to appeal was a result of misleading advice from counsel. [Dkt. No. 1] at ¶ 25. He also did not seek a correction to this discharge "within three years," the time frame defined by 10 U.S.C. §1552(b).[2]

Fifteen years later, on January 24, 2001, plaintiff applied to the Naval Discharge Review Board for review of his discharge, arguing for the first time that the decision was erroneous because it was "for a conviction in a civil court which never occurred." AR 253. The Discharge Review Board found that plaintiff's admission in writing to the offense was sufficient grounds to warrant an administrative separation, and that if plaintiff sought to upgrade his discharge, he

---

[2] The Board for Correction of Naval Records "may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice." 10 U.S.C. § 1552(b).

3

must submit a DD Form 149 to the Board for Correction of Naval Records ("BCNR"). AR 256-57.

On June 10, 2003, over seventeen years after his discharge, plaintiff applied to the BCNR for an upgrade to his discharge. AR 120-136. On December 1, 2003, upon request of the BCNR, the Navy Personnel Command provided an advisory opinion on the issues in plaintiff's application, explaining that a servicemember could be separated for misconduct when "there is a civilian conviction or where there is an action tantamount to a finding of guilt," and that plaintiff's written admission of guilt could be considered tantamount to a finding of guilt under this standard. AR 138-39. The BCNR allowed plaintiff time to reply to the advisory opinion, AR 170, and he submitted a response in which he generally argued that his signed agreement with the prosecutor was not tantamount to a finding of guilt because no court made any findings. AR 140-146. On March 24, 2004, after considering the submitted materials, the BCNR determined that plaintiff had not "establish[ed] the existence of probable material error or injustice" and reaffirmed that plaintiff had properly been "processed for separation by reason of misconduct due to civil conviction." AR 247-48.

Plaintiff waited over 12 years to apply again. On June 16, 2016, plaintiff submitted another application. AR 61-107. The BCNR deemed this application a request for reconsideration because it contained new evidence not included in the earlier application. AR 55. On October 26, 2017, after considering the application, the BCNR again denied relief to plaintiff finding that the "agreement with the State of Delaware included an admission of the sexual assault charge" which, under Navy regulations, was a sufficient ground to warrant the discharge plaintiff had received. Id.

4

Plaintiff applied for further reconsideration in 2021, but because the application contained no new evidence, the BCNR did not reconsider the petition. AR 245.

A. **Procedural History**

On April 16, 2021, plaintiff filed a civil action against the Department of the Navy in the United States District Court for the District of Columbia. He voluntarily dismissed that action on May 17, 2021, and on May 29, 2021, he filed the pending complaint in this court alleging violations of the Sixth Amendment and 10 U.S.C. § 1552, which gives to the Secretary of each armed service department the power to correct military records if he or she "considers it necessary to correct an error or remove an injustice" 10 U.S.C. §1552(a)(1). Plaintiff requests a declaratory judgment that his rights have been violated, a writ of mandamus ordering the Secretary of the Navy to correct his military record and rank, and recovery of costs.

On November 8, 2021, defendants moved for summary judgment on the Administrative Record [Dkt. No. 20]. The Motion is fully briefed, and the Court finds that oral argument would not assist the decisional process.

II. DISCUSSION

A. **Standard of Review**

In a challenge under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701- 706, to an agency action for which there is an administrative record, a court's role is usually confined to review of the administrative record. Am. Canoe Ass'n, Inc. v. U.S. Envt'l Prot. Agency, 46 F. Supp. 2d 473, 475 (E.D. Va. 1999); Thompson v. United States, 119 F. Supp. 3d 462, 467 (E.D. Va. 2015). In conducting such review, the district court must examine the record and assess "whether the agency considered the relevant factors and whether a clear error of judgment was made." Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009) (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)). Generally, if "the

5

agency has examined the relevant data and provided an explanation of its decision that includes a rational connection between the facts found and the choice made," the agency's decision must be upheld. Id. (internal citation omitted). An agency action will also be sustained if it is supported by "substantial evidence," or "such evidence as a reasonable mind might accept as adequate to support a conclusion." Platone v. U.S. Dep't of Labor, 548 F.3d 322, 326 (4th Cir. 2008) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). In a challenge such as this one, plaintiff has "the burden of showing by cogent and clearly convincing evidence that the military decision was the product of a material legal error or injustice." Roetenberg v. Sec'y of Air Force, 73 F. Supp. 2d 631, 636 (E.D. Va. 1999) (citations omitted). Finally, decisions of a military correction board, such as the BCNR, are afforded an "unusually deferential application of the arbitrary or capricious standard of the APA." Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000) (quoting Kreis v. Sec'y of Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989)).

**B. Analysis**

The Navy Military Personnel Manual (1985) ("Manual"), codified at 32 C.F.R. § 41, Appx. A (K) (1985), is the legal text that governs plaintiff's separation from service [Dkt. No. 21-3]. The Manual provides that a member of the military "may be separated for misconduct when it is determined . . . that the member is unqualified for further military service" by virtue of that misconduct. 32 C.F.R. § 41, Appx. A (K) (1985). Misconduct, as relevant to plaintiff's case, includes a "[c]onviction by civilian authorities or action taken which is tantamount to a finding of guilty, including similar adjudications in juvenile proceedings, when the specific circumstances of the offense warrant separation," and either "(1) a punitive discharge would be authorized for the same closely related offense under the Manual for Courts-Martial, or (2) the sentence includes confinement for six months or more without regard to suspension or probation." Id. at (K)(4). Because the child sexual assault charge to which plaintiff admitted

qualifies under these last two standards, both parties agree that the main legal question to be determined is whether plaintiff's signed Probation Agreement which resulted in a <u>nolle prosequi</u> order was properly considered "tantamount to a finding of guilty" as required under this provision. 32 C.F.R. § 41, Appx. A (K)(4)(a) (1985).

Plaintiff argues that because his agreement did not involve an actual adjudication, or a conclusion by a judge in an adversarial setting, it cannot be considered something similar to a civilian "conviction." <u>See</u> AR 140-147. Plaintiff cites to <u>Michigan v. Jackson</u>, in which the Supreme Court determined that adversary criminal proceedings, and various rights that come with such proceedings, begin at an arraignment. 475 U.S. 625 (1986). Because plaintiff's agreement was reached pre-arraignment, he claims that he was not fully in an adjudicatory process at that time, which would preclude either a judicial "finding" or "conviction" having occurred.

Plaintiff's application of constitutional criminal procedure rights to his military discharge is unavailing. As defendants correctly reply, there is no requirement that plaintiff's discharge by reason of civilian conviction be "adjudicated." Rather, plaintiff was discharged for "an action taken" which is "tantamount to a finding of guilty." 32 C.F.R. § 41, Appx. A (K)(4)(a) (1985). Defendants' interpretation of this phrase to encompass a signed admission of guilt provided to a prosecutor in exchange for avoiding a court proceeding was neither arbitrary, capricious, nor in violation of any law or regulation.

Plaintiff then argues that the agreement he signed should not be considered an "admission" of guilt. To support this argument he cites <u>Jaquez v. Sessions</u>, in which the Fourth Circuit determined how to apply deferred prosecutions under Virginia's first offender statute to the immigration laws. 859 F.3d 258 (4th Cir. 2017). That case is inapposite, as the immigration

laws present an entirely different statutory scheme than military personnel regulations. Moreover, that decision does not help the plaintiff because in that case the court concluded that the immigration authorities did not violate the law when they found Jacquez's vacated conviction still qualified as a "finding of guilt" under immigration law. Id. at 261 ("Jaquez's 2005 criminal proceedings fall squarely within the definition of a deferred adjudication conviction under § 1101(a)(48)(A)(i)"). Plaintiff also cites Smith v. U.S., 348 U.S. 147, 152 (1954), to argue that a "criminal conviction" cannot be sustained by an uncorroborated "extra-judicial confession." But again, plaintiff does not face a criminal conviction; he faces a military personnel decision for which he is not entitled to the many protections of criminal procedure regarding confessions. Doe v. United States, 132 F.3d 1430, 1437 (Fed. Cir. 1997) ("[A]n administrative discharge proceeding is not held to the same high standard of proof as a criminal hearing."). Further, a pre-trial agreement with a prosecutor in which the prosecutor agrees not to pursue a criminal prosecution in exchange for the suspect agreeing to certain conditions is a contract, and a charging document can become a part of that contract by direct reference. See, e.g., United States v. Crawley, 2 F.4th 257, 262 (4th Cir. 2021) (the incorporated "statement of facts was an integral part of the plea agreement"), cert. denied, 142 S. Ct. 819 (2022). Plaintiff's agreement stated that he "committed the offense charged" and attached to that agreement was the charging document, which shows that plaintiff admitted committing the sexual assault charged.

Despite his admission, plaintiff argues that there was insufficient evidence of his guilt, comparing his single written agreement with the "plethora" of evidence found in Cameron v. United States, 34 Fed. Cl. 422, 430 (1995). Plaintiff underestimates the evidentiary power of a written admission. The Fourth Circuit has defined "substantial evidence" to mean "evidence that a reasonable finder of fact could accept as adequate and sufficient" to support the conclusion that

8

the offense occurred. United States v. Rodriguez-Soriano, 931 F.3d 281, 286 (4th Cir. 2019). Plaintiff's signed agreement admitting he committed the offense is "substantial evidence" that the offense occurred, because a reasonable finder of fact could conclude that plaintiff would only voluntarily sign such an admission and agree to the accompanying pre-trial conditions if the offense had occurred.

Moreover, the reasoning in Cameron v. United States is not sufficiently distinguishable. In that case, the Court of Federal Claims upheld a military discharge decision in which a servicemember had been convicted of murder in a civilian court, but was able to have the conviction overturned for various procedural errors. Despite the absence of a civilian conviction, the administrative discharge board conducted its own fact finding and recommended Cameron's discharge.

> The board considered this evidence and found, by a preponderance of the evidence, that Mr. Cameron did murder his wife and that a punitive discharge would be authorized for the same or a closely related offense under the Manual for Courts–Martial. It is not the court's role to make new findings. It is sufficient to sustain the discharge that the board's findings regarding the murder charge were supported by substantial evidence.

Cameron v. United States, 34 Fed. Cl. 422, 430 (1995). Heuss emphasizes that the plaintiff in Cameron was discharged by reason of a "serious offense," a different standard of discharge than "civilian conviction," which governs plaintiff's discharge.[3] 32 C.F.R. § 41, Appx. A (K)(3) (1985). Generally, a service member may not undergo discharge proceedings under one standard then be discharged based on another. Gifford v. U.S., 23 Cl. Ct. 8 (1991) (Air Force member who faced proceedings for discharge under Air Force Regulation 36-2 could not then be

---

[3] If plaintiff had timely raised his argument about whether he was actually convicted during his original proceedings with the administrative separation board, the Navy might then have sought to base the discharge on a serious offense rationale, as the military did in Cameron, and which almost certainly would have resulted in a discharge in plaintiff's case.

9

discharged under 36-3 without ever having the opportunity to address that regulation as the official basis for the discharge). Accordingly, plaintiff argues that the standard in Cameron should not be applied to him because he was not discharged for a "serious offense" like Cameron, but for a "civilian conviction." Even if plaintiff were correct that the Navy cannot post-hoc substitute the serious offense discharge for a civilian conviction discharge, the Navy has not done so. Rather, plaintiff's discharge is based on the defendants' view that under the civilian conviction standard for discharge, which includes discharge for an "action… tantamount to a finding of guilty," plaintiff's pre-trial admission provides a sufficient basis for his discharge. Defendants' interpretation of this provision is not contrary to law.

Finally, Plaintiff's complaint alleged violations of his rights under the Sixth Amendment, which provides various protections to defendants in criminal prosecutions. The Court understood plaintiff's complaint to refer to the allegations he made against the counsel who formerly represented him and found no violation;[4] however, plaintiff in his opposition clarifies that he misstated his constitutional claim, and he meant to complain of a violation of due process. That correction is accepted, as pro se litigants are held to "less stringent standards" than lawyers, with their pleadings to be "liberally construed." Estelle v. Gamble, 429 U.S. 97 (1976) (internal citations omitted).

Nonetheless, the record does not include any evidence of violations of due process. Although he disagrees with the outcome of the Navy's process, plaintiff cannot reasonably point to any "constitutionally insufficient" procedures. Roberts v. United States, 741 F.3d 152, 161

---

[4] Plaintiff's allegations complain about the advice of counsel plaintiff received during his Delaware proceedings and during his administrative discharge proceedings. If the former, he is time-barred from raising such claim, and if the latter, as a non-criminal proceeding, the Sixth Amendment does not apply.

(D.C. Cir. 2014). Plaintiff cites to Doe v. U.S., in which an Air Force member was discharged after being accused by his emotionally disturbed teenaged daughter of sexual molestation, even though he had not been criminally convicted. 132 F.3d 1430 (1997). Despite a strict protective order placed over the civilian criminal proceedings because of concerns about the family's privacy, the Air Force attorneys sought to obtain evidence in violation of that order and managed to find a sheriff detective's report that included two main pieces of evidence: the daughter's allegations as passed through a child protective worker and then incorporated into the report, and an allegation that the sheriff had heard the officer's previous lawyer say his client had confessed, which was also included in the report. The military attorneys also unilaterally interviewed the child protective worker and the sheriff, without notifying the accused. Upon review, the Federal Circuit held that discharging Doe on the basis of such unreliable hearsay and unlawfully obtained evidence violated basic principles of fair process.

    By contrast, the record in plaintiff's case shows that he has been given an abundantly fair and thorough review at every stage. Plaintiff, who was represented by counsel, voluntarily signed the pre-trial agreement admitting to the charge, and there is no allegation that the agreement in the record is not authentic. AR 340-1, AR 344-45. The Navy also lawfully obtained plaintiff's signed admission because the victim's parent, who knew the outcome of the criminal case, shared the agreement with his commanding officer, who communicated it to plaintiff's commanding officer. AR 342-43; AR 210; AR 332. Further, during his initial discharge proceeding, plaintiff had a hearing in which he was represented by counsel and had the opportunity to challenge the evidence presented against him, including how it was obtained. AR 276-77. His arguments were considered by a panel of three who voted on each issue individually and made their rationale clear. AR 331-335. Each time that he petitioned for review, even when

those petitions were extremely untimely, he was allowed to present arguments and evidence. AR 253, 256-57; AR 120-136; AR 61-107. He was also given an opportunity to respond to the advisory opinion of the Navy Personnel Command. AR 170; AR 140-146. And ultimately, he was issued a written decision explaining the BCNR's rationale and the outcome of the proceeding. AR 247-248; see also AR 55. Although he does not agree with the outcome of the process, on this record there was no violation of plaintiff's due process rights.[5]

## III. CONCLUSION

For all these reasons, the Court finds that neither the BCNR nor the Navy has acted arbitrarily, capriciously, or in violation of the law in upholding plaintiff's discharge, nor has plaintiff shown that any of his constitutional rights have been violated. Accordingly, defendants' Motion for Summary Judgment will be granted by an Order to be issued with this Memorandum Opinion.

Entered this 28 day of February, 2022.

/s/
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

---

[5] The Court even vacated its original decision granting summary judgment in defendants' favor when plaintiff failed to file his opposition with the Court and has now considered his opposition.